MARY H. SWARTZ, APPELLEE, v. SAMUEL C. DUNCAN ET AL., APPELLANTS.

FILED JANUARY 4, 1894. No. 5392.

1. **Review: APPEAL.** The supreme court, though trying a case *de novo* on appeal, will not disturb the finding of the district court, unless the finding and decree cannot be reconciled with any reasonable construction of the testimony. (*Gadsen v. Phelps*, 37 Neb., 590.)

2. **Principal and Agent: RATIFICATION.** A principal must repudiate the acts of his agent within a reasonable time after such acts come to his knowledge, or his silence and inaction will be deemed a ratification of the agent's conduct. Accordingly, where S., in 1881, conveyed his farm and delivered possession of the same to C. in trust for S.'s use, and C., in February, 1883, sold and conveyed the farm to D., taking his notes

secured by a mortgage on the farm for purchase price, and on February 20, 1883, C. sent the notes to S. and advised him of the sale and conveyance to D., and S. retained the notes and made no objection to the sale, either to C. or D., until October, 1888, when he brought suit to annul the contract of sale, *held*, that S. had ratified the sale and conveyance through C. to D.

3. The evidence relied on in this case to sustain the defense that the compromise or settlement pleaded herein had been procured by unfair means examined, and *held*, not to establish either fraud, duress, or undue influence.

APPEAL from the district court of Jefferson county. Heard below before BROADY, J..

*W. P. Freeman*, for appellants.

*Alfred Hazlett, Shelley L. Webb*, and *John Saxon, contra.*

RAGAN, C.

In the year 1881 Henry R. Swartz and wife conveyed eighty acres of land owned by them, and on which they resided, in Jefferson county, Nebraska, to Martha J. Carpenter, and in 1883 she and her husband, Solon B. Carpenter, conveyed this land to Samuel C. Duncan for an express consideration of $700. Henry B. Swartz instituted this suit in the district court of Jefferson county in October, 1888, against Martha J. Carpenter, Solon B. Carpenter, her husband, Samuel C. Duncan, and Harriet A. Duncan, his wife, alleging, in substance, that defendants, in 1881, conspired together to obtain said land from plaintiff without consideration, and to carry out their fraudulent intention, informed plaintiff that a complaint had been sworn out for him, and that a warrant for his arrest for a criminal offense was then in the hands of the sheriff, and that plaintiff would be arrested and imprisoned if he remained in the country, and advised him to leave the state; that they greatly frightened plaintiff thereby, he being a timid man, and caused him to turn over to Martha J. Carpenter and her

husband all plaintiff's personal property, and to deed to said Martha J. Carpenter the land mentioned above without consideration, transported plaintiff to a railroad station outside of Jefferson county, and shipped him to the state of Illinois, and in a few days thereafter shipped plaintiff's wife and children to him; that plaintiff and his family have since resided in Illinois, and on account of their extreme poverty have been unable to return to Nebraska; that the Carpenters converted to their own use all of plaintiff's personal property; that the conveyance of the land to Duncan by the Carpenters was a part of the fraudulent scheme to defraud plaintiff. The prayer of the petition was for a decree that Duncan be decreed to reconvey the land to plaintiff and for an accounting of rents. Henry R. Swartz and his wife, Mary H., were, after this suit was brought, divorced, and Henry R.'s interest in the land and all his other property transferred to his wife, and she was substituted as the sole plaintiff in this case. The district court found the issues in favor of Mrs. Swartz and entered a decree canceling the conveyance from Swartz and his wife to Mrs. Carpenter, and from Mrs. Carpenter and husband to Duncan, and quieted and confirmed the title to said real estate in Mrs. Swartz. From this decree Carpenter and his wife and Duncan and his wife appeal.

There are three grounds relied upon by the appellants to reverse the decree.

1. That Duncan was an innocent purchaser of the land from Mrs. Carpenter without notice of the fact that Mrs. Carpenter held it in trust. Whether Duncan was an innocent purchaser,—that is, whether he bought this land without knowledge of the fact that Carpenter held it in trust for Swartz,—was a question of fact. The trial court found that Duncan purchased the land with knowledge of the fact that Carpenter held the land in trust for Swartz. After a careful study of the evidence, we are unable to say that this finding is wholly unsupported by competent testimony.

It would subserve no useful purpose to quote the evidence. The testimony does not impress us very strongly with the conviction that Duncan was actuated with a fraudulent purpose in these transactions, but we have only the lifeless record for a guide.   We have not heard the living witnesses speak, nor observed them nor their conduct while testifying. The trial judge had all these opportunities.   The conduct of Duncan in the premises,—that is, what he did and the part he took in sending Swartz out of the country,—was a circumstance susceptible of an innocent or guilty interpretation, and whether one or the other should have been, and doubtless was, determined from the extent of credibility given to the statements of the witnesses, who testified to the facts intended to establish the intent of the actor.   "The supreme court, though trying a case *de novo* on appeal, will not disturb the finding of the district court, unless the finding and decree cannot be reconciled with any reasonable construction of the testimony." (*Gadsen v. Phelps*, 37 Neb., 590.)   The first exception of appellants to the decree must therefore be overruled.

2.  The second point made by the appellants is that Henry R. Swartz, before being divorced from his wife, ratified the sale and conveyance made by the Carpenters to Duncan. It appears from the record that Carpenter and his wife conveyed this land to Duncan on the 7th of February, 1883, the consideration paid by Duncan being $700, and paid as follows: A prior mortgage on the premises amounting, principal and interest, to some $412, and for the remainder of the purchase money Duncan executed to Mrs. Carpenter his note of $300, secured by a mortgage on the real estate. On February 20, 1883, Carpenter wrote a letter to Swartz advising him of the sale and conveyance of this land to Duncan; advised him of the price for which he had sold it to Duncan, and how the consideration was paid, and inclosed the purchase-money notes, unindorsed, to Swartz, and these notes were retained by Swartz.   The mortgage secur-

54

ing these notes was never assigned or delivered to Swartz.
In September, 1883, Duncan paid these notes to the Car-
penters, and Mrs. Carpenter thereupon released the mort-
gage.    There is no evidence that Swartz did or said any-
thing towards repudiating this sale and conveyance until
he brought this suit in 1888, at which time he brought the
notes into court.    After his receipt of the notes he sent
them, in 1883 or 1884, to Messrs. Norval Bros., attorneys
at law, Seward, Nebraska, for collection; and this firm sent
them some time afterwards to one Claussen, a banker, at
Alexandria, Nebraska, for collection.    The letter, with
the notes, came into the hands of one Gowdy, then an at-
torney at law at Alexandria.    He kept them for some time,
and finally, on the 15th of January, 1887, Messrs. Norval
Bros., having regained possession of the notes, returned
them to Swartz.    During all this time Swartz made no effort
to repudiate this sale and conveyance; he was personally
acquainted with Duncan; had been Duncan's neighbor;
knew that Duncan had bought the land of Carpenter; yet
he did not, as a prudent man would have done had he been
dissatisfied with the sale, return these notes to Carpenter
and notify Duncan that he disapproved of the sale and con-
veyance of the land to him.    All these years Duncan re-
mained in possession, paying taxes, and making improve-
ments on the land.    Do these facts establish a ratification
by Swartz of the sale and conveyance of this land by Car-
penter to Duncan?    We think they do.    Swartz knew the
land had been sold by his trustee or agent, Carpenter; knew
to whom sold; knew the price paid, and had in his posses-
sion the evidences of it.    Under these circumstances, if he
was dissatisfied, it was his duty to speak, at least, if not to
act, within a reasonable time.    He remained silent; he re-
mained inactive, so far as repudiating the acts of Carpen-
ter; indeed, his only acts were directed to a confirmation
of what Carpenter had done.    Whether Duncan was an
innocent purchaser,—that is, whether he purchased this land

from Carpenter knowing that he held it in trust for Swartz, —has nothing to do with the point under consideration. Duncan may have purchased with notice of Swartz's rights, —and the finding of the trial court compels us to assume that he did,—but Swartz, knowing this, could not remain silent all these years, until Duncan had changed his status, and then repudiate the sale.   The second exception of appellants to the decree is sustained.

3. The third exception of the appellants to the decree is that Mrs. Swartz, after her divorce, settled and compromised the dispute in this case.   The record shows that after Norval Bros. had returned the notes to Swartz they were put into the hands of one Gowdy, an attorney at Fairbury, Nebraska, and he instituted this suit in the name, as has before been stated, of Henry R. Swartz.   While the action was pending in April, 1890, and after Swartz and wife had been divorced, Duncan and Gowdy effected a settlement of the matters in controversy in this suit, the terms of which were Swartz and wife were to quitclaim the land to Duncan in consideration of his paying $300 and the costs of suit. A deed was accordingly made out and sent to the Swartzes in Illinois, with a statement of the terms and purposes of settlement.   Mr. Swartz executed this deed, but Mrs. Swartz declined to execute the deed and make the settlement, and at once came to Fairbury.   Here, in the office and presence of her attorney, after an interview with Duncan, and a consultation with some of her friends, who, she says, advised her to compromise the case, she, on April 28, 1890, executed the deed already signed by Mr. Swartz. Duncan thereupon paid over the $300 and paid the costs of suit and received his quitclaim deed.   Of the money paid for this settlement, Mrs. Swartz received only about $112 from her attorney.   After this had been done, about May 20, 1890, Mrs. Swartz filed a petition of intervention in this case, and some time afterwards the court set aside the dismissal of the case that had been entered in pursu-

ance of the settlement and allowed Mrs. Swartz to prosecute the action as plaintiff. From anything we have been able to find in the record this compromise or settlement made between Mrs. Swartz and Duncan was fairly made. Mrs. Swartz knew in Illinois of the terms of the proposed settlement and was dissatisfied with it. She comes to Nebraska. She knows at this time all that Carpenter and Duncan had both done. The suit to annul their action is pending. She meets Duncan and charges him, she says, with having purchased the land from Carpenter, knowing it was her husband's. She at first declines to accept the terms of settlement; leaves her attorney's office, remarking that she will, on her return, decide what she will do. She consults her friends. They advise her, she says, to make the settlement. She returns, signs the deed and accepts the money paid in settlement. The record does not show any fraud or deception practiced on her to procure this settlement. She was laboring under no mistake as to the facts. She was not old, infirm, weak-minded, or ignorant. Her evidence to parry this defense is that she was intimidated by her attorney, Gowdy, into agreeing to this settlement; that he betrayed her; that he was in a conspiracy with Duncan; that Gowdy threatened that if she did not execute the deed and carry out the terms of the proposed settlement, he had authority, as her attorney, to do so for her, and bind her, and would do so, and then she would get nothing; that, believing Gowdy had such authority, and that he would do as he threatened, she signed the deed, made the settlement, and accepted the money. There is no evidence in this record sustaining her theory that Duncan and Gowdy conspired together, nor does the evidence sustain her contention that Gowdy betrayed her. Assuming the other evidence of hers to be true, it does not establish that this settlement or compromise was brought about by duress or undue influence. The third exception of the appellants must therefore be sustained.

The evidence in this record establishes beyond all controversy that Martha J. Carpenter did not buy or own this land, but held the same in trust for Swartz, and had his authority to sell and convey it to Duncan as stated above; and the evidence also conclusively shows that about October 1, 1883, Duncan paid to the Carpenters $300 for the balance of the purchase price of said land. This money belonged to Swartz. The Carpenters, however, converted it to their own use and have never paid it, or any part of it, over. They cannot be allowed to retain this money. It is true that they did not receive in cash quite the full amount of $300 and accrued interest of $16, as some $80 were deducted by Duncan for the purpose of clearing up a cloud on the title; but the rents and profits of the land for the length of time it was held and used by the Carpenters were of as great value as the deduction made by Duncan, and, under the evidence, the Carpenters must be held to account for the full $300, with seven per cent interest thereon from October 1, 1883.

The decree appealed from is reversed and the cause remanded with instructions to the district court to dismiss the case as to Samuel C. Duncan and Harriet A. Duncan, his wife, and to enter a personal judgment in this case in favor of Mary H. Swartz against Martha J. Carpenter and her husband for $300, with interest thereon at the rate of seven per cent per annum from October 1, 1883, and to award immediate execution therefor, and tax the entire cost of this proceeding to the said Martha J. Carpenter and Solon B. Carpenter, her husband.

JUDGMENT ACCORDINGLY.